Thank you, Your Honor. Good afternoon. Good morning here still. I'm Thad Blank on behalf of Michael James Bartley from the Federal Defender Services of Idaho. In this case, Idaho competency for savings in the context of a misdemeanor DUI did not serve to strip Mr. Bartley of his Second Amendment right to bear arms. My core argument is that a firearm disability based upon those competency proceedings cannot survive intermediate scrutiny. First, however, I want to address the preliminary hurdle. I'm sorry. I thought somebody had a question. The preliminary hurdle the government throws up, which is the longstanding prohibition language of Heller. 922G4 cannot be one of the longstanding prohibitions Heller is referencing for two reasons. Wait, let's back up here. I understand your brief to concede that Maya's controlling on this issue. I don't know if it is controlling, but that's what you say. So why are we arguing about? Concede that it's controlling us to the longstanding prohibition issue, Your Honor, or the degree of scrutiny? Well, that's everything. I mean, you say that you recognize that the court is bound by May, but you preserve his right to argue that Maya is wrongly decided and that Section 922G4 is unconstitutional as applied to him. So is that what you're arguing, that Maya was wrongly decided? I mean, you spent almost all the time in your brief on this, which is, I don't know why, but that's the choice you made, so now you're squishing your choice. Your Honor, we made a broad challenge to May in the opening brief, and we tailored it and really focused on the areas of May that support our position in the reply brief. So we're arguing that May supports the position that as applied to Mr. Bartley, this does not amount to a commitment that triggers the firearm disability slash, alternately, that it is unconstitutional as applied to him, focusing on the difference between the procedures that led to the commitment in the two cases, the civil commitment process with the finding of dangerousness that was at issue in May versus the misdemeanor competency proceeding that didn't include any finding of dangerousness and much weaker procedural protections at issue in Mr. Bartley's case, while at the same time preserving the opportunity to petition for cert on a very broad-based challenge to intermediate scrutiny, et cetera, et cetera. Turning back to the longstanding prohibition issue, it's the preliminary issue. This 922 G4 is not consistent with any historical understanding of the scope of Second Amendment's rights, and that's because at the time of the ratification of the Second Amendment, madness or lunacy or what we call mental illness today was viewed with some degree of tolerance. It was not viewed as a permanent affliction or a status that automatically triggered restrictions of rights or led to confinement. Crucially, it was exhibition of dangerous behavior that warranted any such restrictions on liberty, not status as a person who was mad or a lunatic. There's problems with the government's evidence that's marshaled in this case on that respect. One is that, as we've pointed out in our brief, they misrepresent one of their strongest historical sources, which is the work of Dr. Gerald Graub, a medical historian. They use his discussion of how the mentally ill were treated in the 19th century after the ratification of the Second Amendment, when there was a change in view leading to the regular detention or insane asylums to suggest that that was the view in the 18th century. But Dr. Graub is very clear that that was a transition, and in the 18th century, the view was different. Those who were viewed as mad were tolerated. They were part of the community and restrictions were... Well, as I understand, it did not rely on that sentence in Heller for much. Instead, it relied on the record in that case about the... which gave some support to the congressional judgment that people who had previously been determined to be adjudicated, committed because they were dangerous. No, no, no. I'm sorry, what? Oh, sorry. You don't have a record in this case, do you, on the question of whether the... on either side, really, about whether the particular kind of finding here, which is essentially that he was incompetent to stand trial, which could be taken to be incompetent to carry out his business, as the regulations describes it, is hooked to any kind of later reason to deprive him of the use of the gun. There's no record one way or the other, is there? That's right. So my reserve's judgment on this longstanding prohibition focuses on the scrutiny test, and Your Honor is exactly correct. There's not a record here because it's not required for the state competency finding that Mr. Bartley is dangerous, and that's the core of our argument. But there's also not a record. I understand that, but what I want to know is whether there's a record of the kind that was relied on in my... I'm sorry, just a minute... with regard to support for the proposition that people who are adjudicated as Mr. Bartley was are a later danger with regard to the use of guns. There's no record about that, is there, one way or the other? That's accurate. There's not sociological or empirical evidence about how this particular type of proceeding relates to a future risk of dangerousness. That's a problem for the government because they bear the burden of proof. So our argument would be that they're using evidence about civil commitment procedures that are fundamentally different than this type of proceeding to argue that it justifies a very significant curtailment on constitutional rights, and that that doesn't get over the hurdle in terms of intermediate scrutiny. I'm going to move to addressing that intermediate scrutiny test, move past the longstanding prohibition argument, and just a couple other points... Let me ask you another question. My understanding in my was that the rehabilitation statute was not available for some technical reasons. Is there an applicable rehabilitation statute here that he could have used? There is. Idaho... this isn't a point that the government focuses on, but there is an that DOJ appears to recognize as compliant with the NICS Improvement Act, and the significance of that... So why are we talking about the longstandingness of this when there was an available remedy for that? I mean, frankly, it appears that he would never have gotten it, that he is still rather impaired, but it was available. Right, that there was some avenue available through which he could have petitioned. The significance in this case is that that's why we're conceding that intermediate scrutiny applies. And Chauvin, which is the case about restrictions based on misdemeanor DUI convictions, it says, you know, it recognizes that there were some avenues available for restoration of rights for that individual, but said the burden is still quite substantial. So Chauvin says, in terms of what degree of scrutiny, it's how close the law comes to the core of Second Amendment rights and the severity of the law's burden on the right. But we can't consider it as a long-term ban when it isn't necessarily a long-term ban. Can we? Well, I think that the longstanding prohibition, the government is arguing that we just don't even look at how this restriction impacts people like Mr. Bartley, because they are interpreting Heller to say no constitutional strict scrutiny, intermediate scrutiny applies. It's just, oh, this vaguely relates to mental illness, game over. That's an argument about the historical view of the Second Amendment. All right, I'm asking now on the intermediate scrutiny problem. Okay, I guess I don't understand Your Honor's point or question about how the longstanding prohibition relates to this problem. Well, all right, put it another way. When you're looking at the intermediate scrutiny, the one side, what you're scrutinizing is a rule that allows for rehabilitation if he's rehabilitatable. So that has to be put into the mix in terms of what the prohibition is that you're considering. It's not a prohibition, it's a prohibition that he could have gotten lifted if he were getting lifted. And you have the problem here is that almost certainly he would never have gotten lifted. It does play into the mix because it goes to the severity of the burden. But it is still a severe burden. As Your Honor's pointing out, it purports with no notice to him to have suddenly made it unlawful for him to possess weapons. He then has the burden of proving under the law that he's not mentally ill or dangerous, even though he wasn't found to be dangerous. And it also has to prove that it's in the public interest to restore his firearm rights. And so to say that there's some avenue for that restoration, which as you're pointing out may or may not have been of any use to him, doesn't change that this still restricts a right that's coercive or right. And you're arguing, as I understand it, are you arguing that if he's currently mentally ill, he still has a second right to have the gun? Well, we're arguing that Congress has reasonably decided to delegate this finding of his status to state proceedings, and that those state proceedings don't provide any basis to attach a firearm's disability because they don't involve a finding that he's dangerous. So that's the focus, is what do those proceedings that it's attached to show, and are they a legitimate basis to attach a firearm disability to? When you said with no notice to him, does that indicate that he didn't know that he had to apply for relief? Is that just a question of knowledge of the statutes, or is there something that failed so that he had no notice? Well, knowledge of the law, I'm pointing out, but I guess I'm pointing out the fact that here the state didn't even follow their own procedures, where they're supposed to, if they believe this is the type of proceeding that would trigger a disability, they're supposed to report it so that that restriction is out there, if he ever sought to buy a gun, and they didn't follow it. I think it just underscores how coordinated... But that's no benefit to him. Well, if he goes in to buy a gun? Well, if he goes in to buy a gun, he could try to get relief from it. Right, he could try and get relief. He would know if he tried to buy a gun. They'd tell him, you're in this database, you're not allowed to buy a gun. Yes, if he tried to buy a gun, then he would know that the feds thought that he was disabled, and then he could go seek relief. Right, exactly. If he tried to buy a gun. Okay, that's all. All right. If there's no further questions, I'll reserve the remainder of my time. I have one question for you. You haven't addressed at all the regulations, federal regulations, which seem to pretty much clarify the meaning of NIN 22-G4, the terms in there. What's your comment on the regulations? Well, I guess the comment is that the regulations could be unconstitutional, and that the HF is not... Well, we've made the argument that the statute is unconstitutional, and so these are the regulations that purport to interpret the statute. They define the scope of the statute in a way that's unconstitutional. I don't see how it could protect this statute from being constitutionally overbrought. That would be the core argument. I guess it's relevant that these statutes don't explicitly attach to state competency proceedings, only to those conducted under the Uniform Code of Military Justice. The regulation says that with regard to the adjudication as a mental defective, which you think they would get that word out of the U.S. reports, as a result of marked subnormal intelligence or mental illness in competency, condition or disease is a danger to himself or others, lacks the mental capacity to contract or manage his own affairs. And it seems, as a matter of the statute, that that applies. Do you agree with that? I agree that I would agree with that, yeah. Okay, so then the question is how far does your argument go, in the sense that I understand he hasn't been adjudicated to be dangerous, but if you have somebody who has severe cognitive problems, for example, severe Alzheimer's, let's say, would you make the same Second Amendment argument? Well, I guess if there was... Is there a Second Amendment problem with the whole concept that somebody who hasn't been adjudicated a danger to himself or others can't have a gun? If they do lack the mental capacity, if they currently, let's say, lack the mental capacity to contract or manage his own affairs? Well, I think that many of these statutes involve a finding that the person is a danger to themselves because they can't deal with basic affairs. And so that would encompass a lot of the examples that the Court is pointing to. So if there was that finding in a civil commitment proceeding, that would be sufficient, but there's not that finding in this context. It's a limited finding that the person is not in a state where they're able to assist their attorney. And it's different. I haven't had a chance to speak to the procedural differences, but there's relatively anemic procedures in competency because they're designed to protect a different interest than the commitment decision. So, yeah, absent a finding that the person's a danger to themselves or others, the disability should not attach. Thank you. Okay. Thank you. Okay. Mr.... Zahari. Zahari. Mr. Zahari. Thank you, Your Honor, and may it please the Court, Frank Zahari on behalf of the United States. I'm going to start by addressing the means and scrutiny, and the congressional... By addressing what? The intermediate scrutiny. Okay. The congressional judgment about this category of persons posing an increased risk of harm when they possess a firearm. What is in the... Is there anything in the record demonstrating that this category of persons has an increased risk of harm? Your Honor, below, we had cited a study by Swanson which dealt with gun violence and suicide. Yes, which is not applicable. I mean, it's the same one that was cited in my and in the other cases. But it has to do with people who were adjudicated to be dangerous. He never has been. That's true, Your Honor. But, you know, this is not a trial. This is the Court looking at the legislative judgments of Congress. And what my tells us is that when the scientific evidence is incomplete, the Court accords substantial deference to Congress's decision. But there's no... All right, all right. But my did rely on some record, the case that you're talking about, and some other evidence. Is there anything here? I mean, could there be? Should we be sending it back to have an evidentiary determination? Your Honor, in terms of studies that look specifically on a finding of incompetency in a criminal trial and the risk those people pose in the future, I'm not aware of studies that look directly at that. But I would note in my, they did not confine themselves to the Denmark study that involved involuntary commitments. They looked beyond that. And they did that because the study that involved involuntary commitments only went about eight and a half years. And they looked at studies that involved outpatient treatment. They looked at studies that involved community treatment. But didn't they all involve people who were considered to be dangerous? No, Your Honor. Specifically, starting with the Denmark study, when you look at the source that defense counsel cites in their reply brief regarding the law in Denmark, specifically on page 15, note 4, the source is mental health law in Denmark. And the standard in Denmark is that there needs to be the prospect of restoring or at least improving health. That would otherwise be seriously compromised. And then it's an or. It's phrased in the disjunctive. Or the patient presents an obvious and considerable danger to himself or others. And so the study that's used in the meta-analysis does not necessarily involve dangerousness. The Denmark law for involuntary commitments uses the disjunctive, and it's either or. And going beyond that, the additional studies did not involve necessarily a finding of dangerousness because those people were not even committed. Those people were in outpatient treatment. And nonetheless, my said, this is relevant to the discussion. This informs our decision. And Congress was absolutely reasonable in finding that people that have mental illness pose an increased risk of harm. And so all of that goes to show that it is a reasonable fit in this case. And when you do accord the deference to the congressional judgment, it shows that there is a fit. It doesn't have to be the least restrictive. And Congress was absolutely reasonable in doing that. Unless there are additional questions. What do you think the pertinence is of the fact that there is a rehabilitation option here? Your Honor, I think it means that we're dealing with a much narrower situation than was present in my brought up the dangerousness component when it was talking about whether there was a reasonable fit. And it looked at the dangerousness component and said, yes, there is a lifetime prohibition under Washington law. However, because there is a required finding of dangerousness in the civil commitment context, that the statutory scheme was narrower than otherwise has been upheld in, for instance, banning felons from possessing firearms. And so in this situation, Mr. Bartley had the opportunity under Idaho law that he could have petitioned the court to restore his firearm rights. So that weighs in favor of the reasonable fit in this case. Counselor, if I could ask you about the statute, we had a brief discussion about adjudicated as a, a mental defective. Do you, do you stand by or argue that lacks the mental capacity to manage your own affairs is encompassed by incompetent to stand trial? Yes, Your Honor. And why is that in the sense that a person can be highly deluded about the matter and still be perfectly able to write checks and buy groceries and so on, as long as it doesn't trigger his particular delusion about what courts do to people? Your Honor, in that situation, a person not being able to understand what's going on in court, not being able to confer with their counsel, not being able to help with their defense. Those are all dealing with the affairs of that person. And if they can't do that, they do not have the ability to manage their own affairs. Well, you think that you think when they wrote the term, manage his own affairs talks about being in court, as opposed to normally, you know, the reason you, you go to court about managing your own affairs are the demented, the people who need guardianship and so forth. And you have this peculiarity. It seems to me that you have people that are perfectly competent, except they believe that the judge is an alien and their lawyer is employed by the KGB. And yet they're perfectly capable of, you know, living in this society as long as they're not, not brought into court. I just wonder that you, do you have cases that, that emphasize that mental defective includes legal problems? Understood your honor. No, I do not have cases, but it's not critical to this case, but I thought it was a little glib earlier. Okay. That's fine. And I wouldn't know, but your position is also that it was a committed to a mental institution. Sure. Absolutely. Your honor. And we do our default prongs. And the funny thing about that is, I mean, it seems to me that the provision about the, the, the military and the regulations about the military code code kind of cuts against that because that specifically says committed for that purpose as to the military code, but doesn't say it. Otherwise it's an odd business. Your honor. My understanding of why the statute was drafted like that. And this is my hypothesis. Is that because it can point to a specific federal statute and one that deals specifically with a finding of incompetency to stand trial, when you're dealing with the 50 states and how they articulate it, there's variation across all the states. And so in order to encompass that, I think Congress tried to create a statute that was broad enough that would encompass all 50 states. Or found incompetent to stand trial, but didn't say or committed for being incompetent to stand trial, but didn't say that. Your honor. It doesn't say that, but I mean, it could be understood as being subsumed within committed to a mental institution as well. Is there a case on that? Your honor, the, the fourth circuit in the midget case held that being after a finding of incompetency and being committed to a state hospital, that it does constitute committed to a mental institution. I would note this court has also done the same in an unpublished decision in Petromala. Very. Couldn't people be found incompetent to stand trial, but under some circumstances, laws say, you know, fine, go on your way. Or does everyone, I mean, in the federal system, I've had them as a district judge sitting as a district judge, you're incompetent to stand trial. We're not guilty by reason of insanity. Then you have to commit them, but then you might let them go. That is possible. Your honor. I would just highlight we're, we're not confined to the least restrictive means here. We simply need a reasonable fit between Congress's judgment. I wasn't going to the judgment. I was just going to the, the sort of the words of, of whether incompetency to stand trial was equivalent to being committed to a mental institution. It wouldn't happen in every case with it. It does in our case. And it does in most cases. Your honor. I haven't seen a situation where that occurred. Typically when you have a finding of incompetency to stand trial, it's dealing with a mental illness. And if the person's not able to make informed decisions about treatment, as, as that happened in this case, they are committed to a state hospital. The reason they're being committed is to basically get them competent. Yes, your honor. The alternative is to say, all right, forget it. We're not going to prosecute them for this DUI. And then you would just let them in. Correct, your honor. So they're committed to restore them to competency for the criminal case. Okay. Anything else? Well, I'll turn briefly to the government's argument about how Heller and the presumptively lawful language should inform the court's analysis. I'd start by noting- If that works at all, it only works because of the rehabilitation option. Right? In other words, it's dealing with somebody who's currently mentally ill. But the question is, how do you decide that? And essentially what you have is a presumption from having been determined to be mentally ill in the past, as long as you have a way to get out of it. That's one way the court could do it. I think kind of the threshold issue before getting to that is, one, whether Mr. Bartley enjoyed Second Amendment rights or whether this category of individuals enjoyed Second Amendment rights. I mean, Heller doesn't say very much. All he says is people who are mentally ill. Right? It doesn't say we're mentally ill. Correct, Your Honor. It says the court was not casting doubt on the longstanding prohibitions on the possession of firearms by felons, the mentally ill. And then it goes on to talk about sensitive places being in schools or government properties. I mean, you could have an assumption that anybody who's mentally ill remains mentally ill. Don't we know that that might have been the assumption some time, but it's just not true anymore with current treatments. Well, Your Honor, when the Supreme Court made that statement in Heller, there are a number of statutes in the Federal Code that restrict firearm possession, but there's only one that can reasonably be interpreted to apply to those with mental illness. And that's Section 19. We're not talking about the Federal Code. We're just talking in general. Your Honor, most states that have laws that prohibit individuals with mental illness from possessing firearms use language that's similar in terms of how they look to findings from a court, adjudications on whether a person's been found, and as the Federal Code puts it, mentally defective. The language varies. Some states have the ability to have those rights restored and some don't. But in terms of just a flat-out it's unlawful for a person that's currently mentally ill to possess a firearm, I'm not aware of a specific statute that says that. And I think that's because that statute would be extremely difficult to uphold. It would be extremely broad. It wouldn't provide people the notice that would be required in order to be on notice that what they're doing is unlawful. And so in order to create a statute that would effectively create a class of people that is well-defined, Congress created the ones we have here. Now, Mike does talk about that there are two classes of people that do not enjoy Second Amendment rights. And it talks about those people listed specifically in Heller as having presumptively lawful, long-standing prohibitions, felons in the mentally ill. And then it says, or, where they historically fall outside the ambit of the Second Amendment. And this court... What says that, I'm sorry? My says that. The Jackson case says that as well. And this court has relied on... But why do you really rely on that language, Janet? My did not. But the Bonk State case from the circuit that addressed the felon in possession statute did. And the third circuit has relied on that language in Binderup regarding the felon in possession statute. That's because the word felon is defined by what somebody did in the past, right? That's what makes you a felon. Having done something. Correct, Your Honor. A felon involves a crime punishable by imprisonment for a term exceeding one year. Once a person's committed a felony, that's at that point in time. But here we're dealing with an adjudication at one point in time. And if the court needs to cabinet to have the restoration possibility to make it work, I think that's a reasonable way to do it. Unless there are any further questions. Thank you very much. Mr. Blank. Thank you. Two points. Dangerousness is important for finding that this survives intermediate scrutiny. It has deep historical roots. It has deep roots in Supreme Court case law. Drawing the lines between how we can treat people who are subject to various restrictions on their liberty. And it's at the core of Mai's analysis as to why the restriction in that case was permissible. In this case, Mr. Bartley is being prosecuted because he wielded a firearm in a fashion that the party stipulated was self-defense. He's never been found dangerous by any adjudicative body. This court should hold that his firearm rights cannot be restricted based on proceedings that did not include that very common component of commitment proceedings. Unless there's any questions, I would ask the court to vacate this convention. Thank you very much. Thank you for your help with this interesting case. United States v. Bartley is submitted. And then we'll go to the last case of the day. Which is the state of Washington. Known as Munden v. Stewart-Pyle.
judges: Boggs, Tashima, Berzon